# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JAMES THOMAS JOHNSON, | : | CIVIL ACTION NO. |
| GDC ID # 344029, Case # 544870, | : | 1:12-CV-01186-TWT-JCF |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| ANGELA WILLIAMS, | : | HABEAS CORPUS |
| Respondent. | : | 28 U.S.C. § 2254 |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Petitioner, a Georgia prisoner, challenges via a 28 U.S.C. § 2254 habeas corpus petition his September 24, 2008 conviction in Cobb County, Georgia for kidnapping with bodily injury. (Doc. 1). Now before the Court are the habeas petition (*id.*); Respondent's motion to dismiss (Doc. 6) with supporting brief (Doc. 6-1) and exhibits (Doc. 7); and Petitioner's responses (Docs. 8, 9).[1] Because Petitioner's guilty plea agreement includes a waiver of his right to seek collateral review of his conviction and Petitioner has not demonstrated that his plea was unknowing or involuntary, it is **RECOMMENDED** that his habeas petition be **DENIED**.

---

[1] Citations to the record are to the pagination in the Court's CM/ECF system, not to the original pagination of the record documents.

# I. Procedural History

## A. Overview

In dismissing Petitioner's 2009 state habeas petition (Doc. 7-1), his second, the state habeas court set forth the following procedural background:

> [O]n August 28, 2003, the Cobb County grand jury indicted Petitioner for kidnapping with bodily injury and two counts of aggravated assault. On February 13, 2004, pursuant to a negotiated plea agreement, Petitioner pled guilty to kidnapping with bodily injury and received a life sentence.
>
> Petitioner's original 2004 Cobb County kidnapping with bodily injury conviction was reversed due to ineffective assistance of counsel. The Georgia Supreme Court deemed counsel's failure to research the issue of double prosecution in different counties and his advice on the issue as "incorrect," as the kidnapping prosecution in Whitfield County was barred by double jeopardy. *See Upton v. Johnson*, 282 Ga. 600, 604, 652 S.E.2d 516 (2007).
>
> On September 24, 2008, pursuant to a negotiated plea agreement, Petitioner again pled guilty [in Cobb County] to kidnapping with bodily injury and received a life sentence.
>
> As part of the negotiated guilty plea agreement, Petitioner agreed to waive, among other things, collateral challenge by habeas corpus or other post conviction relief in exchange for the State's agreement not to prosecute all offenses – indicted and unindicted – arising from the incident underlying th[e] guilty plea. The additional offenses included those originally charged in Cobb County in *State v. Johnson*, Case No. 03-9-3644-42, and those originally charged in Whitfield County in *State v. Johnson*, Case No. 47272-M.
>
> The agreement was formalized in a written "Defendant's Waiver: Statute of Limitation, Speedy Trial, and Bar to Prosecution," which was

executed and signed by Petitioner, Petitioner's counsel, and the District Attorney. Further, the agreement was explained to Petitioner at the September 2008 guilty plea hearing, and Petitioner acknowledged that he had read, signed, and understood the agreement.

(Doc. 7-3 (Sept. 22, 2011 State Habeas Order) at 1-3 (citations omitted)).

After conducting an evidentiary hearing (*see* Doc. 7-2), the state habeas court dismissed Petitioner's 2009 state habeas petition "in accord with Petitioner's waiver of his right to seek habeas corpus relief as part of the [2008] plea agreement" (Doc. 7-3 at 5). The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause for review of his 2009 state habeas petition. (Doc. 7-4). Petitioner then filed the instant federal habeas petition. (Doc. 1).

**B.     Petitioner's 2004 Guilty Plea and First State Habeas Petition**

Petitioner pled guilty in 2004 in the Superior Court of Cobb County to the charge of kidnapping with bodily injury. In October 2007, in affirming the grant of habeas relief to Petitioner, the Georgia Supreme Court summarized the factual basis for Petitioner's plea as follows:

This appeal is from the grant of habeas corpus relief based on ineffective assistance of counsel, specifically on the failure to research double jeopardy issues and the provision of incorrect advice on that subject, leading to a guilty plea. James Johnson was indicted in Whitfield County for kidnapping, false imprisonment, criminal attempt to commit murder, and possession of tools for the commission of a crime. He was indicted three months later in Cobb County for kidnapping with bodily injury and two counts of aggravated assault. All

3

the charges arose from an incident in which Johnson, waiting in his estranged wife's Cobb County home when she arrived, accused her of having been with another man, assaulted her, rendered her unconscious, put her in the trunk of her car, put their child in the car, and drove away. She awoke as he drove and opened the trunk partially, attracting the attention of passers-by. After driving from Cobb County to Whitfield County, Johnson stopped at a service station where the victim was able to escape with the aid of bystanders while Johnson drove away with their child in the car.

*Upton v. Johnson*, 652 S.E.2d at 517-18. The state habeas court had found that Petitioner's first plea counsel incorrectly advised him that if he did not plead guilty to kidnapping in Cobb County and instead was convicted there by jury trial, he could then be prosecuted for kidnapping in Whitfield County and if convicted there receive a consecutive sentence of life without parole. *Id.* at 518. "The habeas corpus court also [had] found as a fact that if [Petitioner] had known he could not be sentenced to a consecutive term of life without parole in Whitfield County, he would have insisted on going to trial in Cobb County." *Id.* The Georgia Supreme Court concluded that

the kidnapping charges in the two counties were the same offense and the kidnapping prosecution in Whitfield County would be barred by double jeopardy, [so that] trial counsel's advice that Johnson could be prosecuted for kidnapping in Whitfield County and be sentenced to a consecutive term of life imprisonment without the possibility of parole was, as the habeas corpus court concluded, incorrect.

*Id.* at 520. Accordingly, Petitioner's original 2004 plea agreement was vacated.

4

### C. Petitioner's 2008 Guilty Plea Agreement and Hearing

Represented by Rodney Zell, who also had represented Petitioner during his first state habeas corpus proceedings and in the Georgia Supreme Court, Petitioner entered into another plea agreement in Cobb County on September 24, 2008. Petitioner signed a document indicating that he understood the rights he was waiving by pleading guilty, that it was his own "free decision and choice after talking with [his] attorney" to plead guilty to the charge of kidnapping with bodily injury because he was in fact guilty, that he understood that the maximum sentence for his crime was life imprisonment, that he had not been coerced or enticed into pleading guilty, and that he was satisfied with the assistance of his counsel. (Doc. 7-5 at 3-5). Petitioner also signed Defendant's Waiver (Statutes of Limitations, Speedy Trial, and Bar to Prosecution), which states in full:

> James Thomas Johnson [Petitioner] and the State of Georgia enter into this agreement as part of a negotiated guilty plea wherein Johnson is pleading guilty in the Cobb Judicial Circuit to Kidnapping with Bodily Injury. In exchange for the State's promise not to prosecute all offenses–indicted and unindicted–arising from the incident underlying this guilty plea, Johnson hereby agrees to not directly, indirectly, or collaterally challenge his conviction and sentence underlying this guilty plea. The additional offenses in question include those originally charged in the above-styled case, as well as those originally charged in Whitfield County (Georgia) Indictment No. 47272-M. Johnson enters this agreement upon advice of counsel understanding that some of the additional offenses may or may not be viable under the law.

5

> Should Johnson ever default in this agreement, the State shall have the right to prosecute him, and Johnson shall be subject to prosecution in the courts of this State or the United States, for any and all offenses–indicted and unindicted–arising from the incident underlying this guilty plea, regardless of any statutes of limitation, right to speedy trial, or any other bar to prosecution. This agreement therefore constitutes an affirmative, free, knowing and voluntary waiver of these personal rights.

(*Id.* at 6-7).

At the guilty plea hearing, the Cobb County prosecutorial team announced that it was prepared to try the case before a jury, if necessary, and then introduced or referred to extensive evidence of Petitioner's actions on March 31, 2003, including his repeated attempts to strangle the victim, his estranged wife, after luring her to his home in Cobb County to pick up one of their children; his placing her inert body in the trunk of her own car along with a pick axe and plastic sheeting, newly purchased; and his driving off with the victim in the trunk and their twenty-month-old son in the back seat of the car. The hearing included a 911 call describing a woman's hand waving from the trunk of that car which ultimately led to Petitioner's capture in Whitfield County. (Doc. 7-6 at 2-25).

> Now, after . . . Mr. Johnson[ Petitioner] pulled into the gas station [in Whitfield County] to get gasoline – the victim jumped out of the car and freed herself. And she was actually freed from his captivity. And she tried to get away.
>
> And this is where the Whitfield County case comes into play, and

6

we have Mr. Lee Miles, from the Whitfield County's District Attorney's Office, to explain the basis of the indictment in Whitfield County when it was originally indicted.

(*Id.* at 25). Mr. Miles explained:

> Whitfield County's position, as far as its indictment, was Ms. Johnson, or now Ms. Walters, was free when she was at the gas station and got out of the trunk of her own car.

> At the time when Mr. Johnson came into Whitfield County he assumed that his wife was dead. He had a pick axe in the car, and that when Ms. Johnson le[a]pt out of the trunk she was free.

> He re-abducted her, grabbed her when she ran from the car and was in the gas pump area. He brought her back to the car. During that time Ms. Johnson said that she was hit in the face by the Defendant and hit on the arm. And at one point she was actually bracing herself up against the car with her arms locked and her elbows locked, and he was trying to force her in the front passenger side. And he was hitting her arm trying to break her arm down so she would get in the car.

> This is while the child was present and she could see him, I believe is what her testimony would be, in the back seat of the car, observing this.

> She eventually got away when civilians came up to the car and Mr. Johnson abandoned his attempt to put her in the car and then she ran inside as shown by the tapes.

> And the State's position is during that time he kidnap[p]ed her, he caused bodily injury, he falsely imprisoned her by not allowing her to leave the area of the gas pumps. He possessed tools for a crime, specifically, the pick axe with which he intended to bury Ms. Johnson and use the grave to conceal the evidence of the murder.

> And that when he had the pick axe and tried to force her in the car

it was criminal attempt to commit murder. And these charges are to be separate and specific due to her escape from her previous confinement by the Defendant.

(*Id.* at 25-27). Mr. Miles explained that the charges had been nolle prossed in connection with the 2004 guilty plea but that "we are actually ready for re-indictment in Whitfield County if needed." (*Id.* at 27).

The Cobb County prosecutor then explained that the Whitfield County charges had "nothing to do with our plea." (*Id.* at 27-28). However, Mr. Zell, Petitioner's counsel, and Mr. Miles agreed that if Petitioner received a life sentence for kidnapping in Cobb County, "Whitfield County would not proceed." (*Id.* at 28-29). The Cobb County prosecutor then placed on the record "that the viability of the Whitfield County charges, whether they're good or not, has no bearing on this guilty plea." (*Id.* at 30).

The trial court then asked Petitioner a series of questions, and his replies established that he understood and agreed to the specific waivers set forth in the Defendant's Waiver; that he understood the trial rights that he was waiving by pleading guilty; that he understood that he could receive a life sentence for the crime to which he was pleading guilty; that his "plea of guilty [was] made on [his] free decision and choice"; that he had not been influenced to plead guilty by threats or promises, other than the Whitfield County promise not to prosecute him for other

AO 72A
(Rev.8/82)

crimes; that the evidence presented against him at the plea hearing was accurate; and that he pled guilty to kidnapping with bodily injury because he was in fact guilty. (*Id.* at 32-39). Mr. Zell then explained, among other things, that the bone of contention in the prior habeas proceedings—namely, whether the Whitfield County kidnapping charge was viable or barred by the prohibition against double jeopardy—was "not an issue here," and he stated that he had explained that fact to Petitioner. (*Id.* at 40-41). The trial court accepted Petitioner's plea, finding that it was "freely, voluntarily and knowingly made [and] that it ha[d] a factual basis." (*Id.* at 45).

### D.   2009 State Habeas Petition, Hearing, and Order

Proceeding *pro se*, in 2009 Petitioner filed his second state habeas petition, as noted above, raising the following four claims, based on alleged violations of the Sixth and Fourteenth Amendments to the United States Constitution:

(1)    ineffective assistance of counsel during pre-trial proceedings and at the plea hearing for failing to file pre-trial motions, interview the alleged victim, investigate the case, provide a defense strategy, or prepare Petitioner for trial; and for erroneously informing Petitioner that he could be prosecuted in Whitfield County and receive a consecutive sentence of life without parole for the same charges he faced in Cobb County;

(2)    his plea agreement was invalid because he entered into it unknowingly and involuntarily, in that he was coerced into pleading guilty, accepting a life sentence, and waiving any bar to prosecution in Whitfield County by the threat of that prosecution, as embodied by the district attorney and an assistant district attorney from Whitfield County, who were present at the plea hearing;

9

(3)      his guilty plea was coerced by defense counsel "telling him he had no win in Cobb County" even if he paid counsel $20,000 and by the threat of prosecution in Whitfield County and the possibility of a consecutive sentence of life without parole; and

(4)      ineffective assistance of counsel for failing to inform Petitioner that he could not be prosecuted in Whitfield County because of the rule against double jeopardy and that if he went to trial in Cobb County, the aggravated assault and kidnapping charges could merge.

(Doc. 7-1 at 4).

At the state habeas evidentiary hearing, Mr. Zell testified to the following: (1) he did not recall Petitioner ever telling him that he wanted to go to trial; (2) he thoroughly investigated Petitioner's case, but found it to be "open and shut," with no viable defense, including the two defenses Petitioner suggested—temporary insanity and crime of passion—and therefore advised Petitioner that he "didn't have a chance to win at trial," but he never conditioned his advice on a payment of money, $20,000 or otherwise; (3) although he advised Petitioner that if he went to trial in Cobb County, the aggravated assault charges "probably would merge" with the kidnapping charge, the courts might have ruled that they involved "a separate incident prior to the actual kidnapping and . . . would not merge"; (4) he explained to Petitioner that the double jeopardy bar to the Whitfield County kidnapping charge "was the exact ground we won the first habeas on" and, accordingly, he never told Petitioner that if he did not take the plea deal, Whitfield County could sentence him to life without

10

parole for kidnapping; (5) the only viable defense strategy was to delay the second plea hearing as long as possible to allow the victim to soften her stance so that he might be able to convince the court to reduce Petitioner's sentence; (6) he asked the Whitfield County prosecutor to speak at the plea hearing so as to place on the record that the plea deal included an agreement that Whitfield County would not prosecute Petitioner for the crimes he committed there; and (7) Petitioner did not seem upset by the presence of the Whitfield County officials and never informed him that their presence unnerved him. (Doc. 7-2 at 6-15).

As noted above, the state habeas court dismissed the petition based on Petitioner's waiver of his right to seek habeas corpus relief. (Doc. 7-3 at 5). The court noted that plea agreements such as Petitioner's "are valid and enforceable under state law and do not violate public policy." (*Id.* at 3 (citing *Allen v. Thomas*, 265 Ga. 518, 518, 458 S.E.2d 107 (1995))). Noting that such an agreement may be challenged via state habeas corpus only "on the limited issue of whether the petitioner knowingly and voluntarily entered into" it, the state habeas court concluded that "the record as a whole clearly shows that Petitioner voluntarily and intelligently entered into the plea agreement and that, by doing so, he knowingly and intentionally waived his rights to seek habeas corpus relief under the standard of *Johnson v. Zerbst*, 304 U.S. 458 (1938)." (Doc. 7-3 at 3-4).

AO 72A
(Rev.8/82)

Proceeding *pro se* once again, Petitioner filed the instant federal habeas petition, raising virtually the same four claims that he raised in his state habeas petition. (Doc. 1 at 5-6).

## II.    Federal Habeas Review

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. *See* 28 U.S.C. § 2254(a). This power, however, is limited.

### A.    Procedural Default

#### 1.    The Bar to Claims Procedurally Defaulted in State Court

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court, i.e., a claim "*not* resolved on the merits in the state proceeding" based on "an independent and adequate state procedural ground." *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977) (noting that it was consistent with the United States Constitution for state procedural rule to require that alleged error "be challenged at trial or not at all").

> [P]rocedural default can arise in two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, *Sykes* requires the federal court to respect the state court's decision. Second, if the petitioner simply never raised a claim in state court, and it is

12

obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

*Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting that if (a) petitioner failed to exhaust state remedies and (b) state courts would now find his claims procedurally barred, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims"); *Owen v. Sec'y for the Dep't of Corr.*, 568 F.3d 894, 907-08 (11th Cir. 2009) (same).

## 2. <u>Lifting the Federal Procedural Bar</u>

The procedural bar to federal habeas review may be lifted if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law, or (2) a fundamental miscarriage of justice, i.e., that he will remain incarcerated despite his actual innocence unless the federal court considers his defaulted claim. *See Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986). To establish cause for a procedural default, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense

13

impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Haley*, 353 F.3d 880, 892 (11th Cir. 2003).

In order to establish a fundamental miscarriage of justice, i.e., "that constitutional error has resulted in the conviction of one who is actually innocent of the crime," a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and he "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," *id.* at 327. A reviewing court should make the actual innocence determination "in light of all the evidence" and may "consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327-28.

## B. <u>Merits Review</u>

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless that adjudication resulted in a

14

decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's determination of a factual issue is presumed correct unless the habeas petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court explained that in applying 28 U.S.C. § 2254(d), a federal habeas court first ascertains the "clearly established Federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." The federal habeas court then considers whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable from" those in a Supreme Court decision "and nevertheless arrives at a result different from" that decision. *Id.* at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then considers whether the decision is

15

an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' " *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. Thus, "[a]s a condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher

threshold."); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("Where, as here [i.e., in reviewing a federal habeas petition], the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.").

This Court has reviewed the parties' filings, including the exhibits, and finds that the record contains sufficient facts upon which the issues may properly be resolved. As Petitioner has not made a showing sufficient under 28 U.S.C. § 2254(e) to warrant a federal evidentiary hearing, the case is now ready for disposition.

## III. <u>Substantive Law</u>

### A. <u>Ineffective Assistance of Counsel</u>

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Id.* at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.* First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly

17

deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Supreme Court more recently explained the difficult challenge facing a state prisoner who has raised an ineffective assistance of counsel claim:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.

18

Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 131 S. Ct. at 788 (citations and internal quotations omitted).

### B.     The Validity of Plea Agreements

"Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (internal quotations omitted). "The [due process] standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 30-31 (1970). To satisfy due process, a defendant's waiver of the constitutional rights

19

associated with a criminal trial must be voluntary and knowing. *See Finch*, 67 F.3d at 914 (stating that "[f]or a guilty plea to be entered knowingly and intelligently, the defendant . . . must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the *legal options and alternatives that are available*") (internal quotations omitted) (emphasis in original). Evidence that an accused entered his guilty plea knowingly and voluntarily includes "[s]olemn declarations in open court," which "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," but also noting that "the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment").

The two-part *Strickland* test also applies in the context of a guilty plea, where, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

20

guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) (stating that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary").

**IV.**  **Discussion**

Because the state habeas court dismissed all of Petitioner's claims without addressing any of them on the merits, Petitioner has procedurally defaulted those claims and he may proceed here only if he can show cause and prejudice or a fundamental miscarriage of justice to excuse that default. *See Bailey*, 172 F.3d at 1302-03; *Coleman,* 501 U.S. at 750. As is shown below, Petitioner has not done so.

**A.**  **Petitioner's Ground One Claims of Pre-Plea Ineffective Assistance of Counsel Fail Because a Valid Guilty Plea Waives All Claims of Pre-Plea Error.**

In ground one, Petitioner claims that counsel's pre-trial performance was deficient because he failed to properly investigate Petitioner's case or develop a viable defense strategy and because he misinformed Petitioner about the consequences of a possible kidnapping prosecution in Whitfield County. (Doc. 1 at 5-6; *see* Doc. 9 at 4-5). However, because, as discussed below, Petitioner's guilty

21

plea was knowing and voluntary, he has waived any claim regarding counsel's pre-plea performance. *See Bigelow v. Culpepper*, No. 2:09-cv-107-FtM-29SPC, 2012 U.S. Dist. LEXIS 42426, at *45 (M.D. Fla. Mar. 28, 2012) ("Pre-plea ineffective assistance of counsel claims are . . . waived by entry of a knowing and voluntary plea."); *see also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). Moreover, because Petitioner's guilty plea was knowing and voluntary, he cannot overcome the procedural default of his ground one pre-plea claims, which results from the state habeas court's declining to address those claims on the merits based on "an independent and adequate state procedural ground." *See Sykes*, 433 U.S. at 86-87. Finally, as discussed below, Petitioner's assertion that plea counsel misinformed him about the potential kidnapping charges in Whitfield County is simply not credible.

**B.** **Petitioner's Remaining Ground One Claim and His Ground Two, Three, and Four Claims Fail Because He Acknowledged At His 2008 Guilty Plea Hearing That He Had Not Been Coerced Into Pleading Guilty and There Is No Indication That His Plea Counsel Misinformed Him About Other Matters Relevant to His Plea.**

Petitioner claims in ground two that he was coerced into pleading guilty by the

presence of the Whitfield County prosecutors, who threatened to prosecute him on indicted and unindicted charges, resulting in a possible sentence of life without parole if he did not accept a life sentence in Cobb County for kidnapping with bodily harm. (Doc. 1 at 6; *see* Doc. 9 at 6-9). Petitioner claims in grounds one and three that plea counsel, Mr. Zell, coerced him by telling him that he could not win if he went to trial in Cobb County, even if he paid counsel $20,000, and that if he did go to trial he would also be prosecuted in Whitfield County and could receive a sentence of life without parole there. (Doc. 1 at 6; *see* Doc. 9 at 10-11). Finally, in ground four, Petitioner claims that plea counsel provided him with ineffective assistance by misinforming him about the status of the Whitfield County kidnapping charge and of the Cobb County aggravated assault charges. (Doc. 1 at 6; *see* Doc. 9 at 11).

Petitioner, however, testified under oath at his 2008 guilty plea hearing that he had not been coerced into pleading guilty, and he also acknowledged that other than the Whitfield County prosecutor's promise not to prosecute him, he also had not been promised anything to influence him to plead guilty. (*See* Doc. 7-6 at 37-38). Such solemn declarations "constitute a formidable barrier in any subsequent collateral proceedings," *see Blackledge*, 431 U.S. at 74, and Petitioner has not made a showing sufficient to overcome that barrier. In fact, he has done little more here than to insist

23

that he felt intimidated by the Whitfield County prosecutors during his 2008 guilty plea hearing, which flatly contradicts his testimony under oath at the hearing.

Moreover, Petitioner, with Mr. Zell as his attorney, had prevailed in his first state habeas proceedings based on the claim that his 2004 guilty plea counsel had been ineffective for failing to advise him that double jeopardy barred a Whitfield County kidnapping prosecution based on the same facts underlying the Cobb County prosecution.[2] In exchange for Petitioner pleading guilty to the charge of kidnapping with bodily injury in Cobb County, Whitfield County agreed not to go forward with *other* charges, for actions taken by Petitioner when his captive tried to escape in Whitfield County, that were "separate and apart" from the charges in Cobb County. (*See* Doc. No. 7-6 at 31). Thus, Petitioner's contention that counsel was ineffective in failing to advise him that double jeopardy would bar a Whitfield County prosecution fails on two levels. First, Petitioner's counsel can not be faulted for failing to advise Petitioner of the circumstances that resulted in the granting of his first habeas petition. Second, the record reflects that Petitioner was plainly advised that he was entering his plea, in part, based on Whitfield County agreeing not to go

---

[2] Zell, understandably, disputes Petitioner's version of events surrounding this issue. (*See* Doc. 7-2 at 8, 12).

AO 72A
(Rev.8/82)

forward with other charges.  (*Id.*).  Under these circumstances, it cannot be said that counsel provided ineffective assistance in connection with the plea.  *See Searcy v. Fla. Dep't of Corr.*, No. 11-13800, 2012 U.S. App. LEXIS 16545, at *10-11 (11th Cir. Aug. 9, 2012) ("We have held that 'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.' *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).").  Finally, and importantly, Petitioner also has failed to demonstrate prejudice arising from the alleged ineffective assistance of his plea counsel, namely, that there is a reasonable probability that absent counsel's allegedly erroneous advice he would have insisted on going to trial.  *See Hill*, 474 U.S. at 59; *Stephens v. Sec., Fla. Dep't of Corr.*, 678 F.3d 1219, 1225 (11th Cir. 2012) (concluding that petitioner "cannot meet [the *Hill*] standard" because "[t]he record reflects that the plea to the [kidnapping] charge was made knowingly and voluntarily[,]" and petitioner "conceded his involvement in the [kidnapping]").

Because Petitioner has failed to establish that the state habeas court erred in finding that his guilty plea was both knowing and voluntary and, by implication, that

AO 72A
(Rev.8/82)

his plea counsel provided effective assistance with respect to the plea hearing (*see* Doc. 7-3 at 3-4), Petitioner's ground one through four claims to the contrary fail. *See Richter*, 131 S. Ct. at 786-87 ("As a condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). Accordingly, Petitioner has failed to demonstrate cause and prejudice to overcome the procedural default of his federal habeas claims arising from the state habeas court's declining to address those claims on the merits due to Petitioner's 2008 guilty plea waiver.[3] In short, none of Petitioner's claims are properly before this Court, and none have merit even if they were.

## V.    Certificate of Appealability

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition. 28 U.S.C. § 2253(c)(1)(A). A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when

---

[3] Petitioner also has not attempted to demonstrate a fundamental miscarriage of justice, i.e., his actual innocence of the kidnapping with bodily injury charge.

"reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (quotations omitted). The undersigned finds that the viability of Petitioner's procedurally defaulted claims are not debatable by jurists of reason and recommends that Petitioner be **DENIED** a certificate of appealability.

AO 72A
(Rev.8/82)

## VI.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **GRANT** Respondent's motion to dismiss (Doc. 6), **DISMISS** the petition for a writ of habeas corpus (Doc. 1), and **DENY** Petitioner a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED and DIRECTED** this __27th__ day of __November__, 2012.

_____
J. CLAY FULLER
United States Magistrate Judge

AO 72A
(Rev.8/82)